FILED
 2014 Apr-11  AM 11:09
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **EDWIN G. DANIEL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:12-CV-1129-** |
| ) | **CLS** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Edwin G. Daniel, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration, denying his application for a period of disability and disability insurance benefits. Claimant timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker*, 646 F.2d , 1075, 1076 (5th Cir. Unit A Jun.1981)). Therefore, this court reviews de novo the Commissioner's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The Commissioner's "failure to apply the correct law or to provide the reviewing court

with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

(3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4) whether the claimant can perform any of his or her past work; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  To satisfy this burden, the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f).  A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v).  A claimant who cannot do other work will be found disabled. *Id.*

In the present case, Claimant is seeking Title II disibility insurance benefits. Based on Claimant's earnings records, he has sufficient quarters of coverage to remain insured through December 31, 2007. R. 17.  Therefore, Claimant must establish that he became disabled on or before December 31, 2007, his date last insured ("DLI"). *See* 42 U.S.C. § 423(d)(1)(A); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

The Administrative Law Judge (ALJ) determined that Claimant was not engaged in substantial gainful activity, and found that claimant had the severe impairments of "depression/bipolar disorder and anxiety/panic disorder." R. 19.

He concluded that Claimant did not suffer from a listed impairment. R. 19. The ALJ found that Claimant had the residual functional capacity (RFC) to perform "a full range of work at all exertional levels." R. 21. However, he included additional nonexertional limitations related to Claimant's mental impairments. R. 21. With this RFC, the ALJ found Claimant unable to perform his past relevant work. R. 26.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to establish the presence of other jobs at step five.[2] *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id*. (alteration supplied). Based on Claimant's RFC, and the testimony of a vocational expert (VE), the ALJ found that claimant could perform other work in the national economy. R. 26-27, 53-55. Therefore, the ALJ found that Claimant was not disabled at step five of the sequential evaluation framework. R. 27.

### III. FACTUAL BACKGROUND

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

Claimant filed an application for a period of disability and disability insurance benefits on August 4, 2008, and alleges he became disabled on January 1, 2004. R. 16.  Claimant was 41 years old on his DLI. R. 26.  He has a high school education and past relevant work as a cashier, newspaper carrier, truck driver, cook, and grinder. R. 26.

When Claimant applied for disability insurance benefits, he alleged that his ability to work was limited due to depression, suicidal ideation, and anxiety. R. 92.  At that time, he listed his height as 6'2" tall. R. 91.  During the administrative hearing, he testified that, as of his DLI, he estimated his weight as "between 250 and 300" or "maybe a little less." R. 48.  On appeal, Claimant's only argument is that his morbid obesity was not properly considered by the ALJ in reaching his decision. Pl.'s Br. 3.

The only treatment notes prior to Claimant's DLI are from mental healthcare professionals.  These sources often describe Claimant as morbidly obese, or obese, but there is no indication they were treating him for his physical conditions. *Eg.* R. 181, 250.  In a treatment note dated December 11, 2007 — near Claimant's DLI — Dr. Doody estimated claimant's weight as 325-350 pounds. R. 244.

The treatment records show that Claimant was treated for depression and anxiety from 2006 until October 26, 2007, by Dr. Love, a psychiatrist, and other

staff at the Mental Health Center of North Central Alabama. R. 181-242.  At the time he was discharged from treatment, his GAF was assessed as 58.[3] R. 181.  On November 26, 2007, Claimant began treatment with Dr. Doody, a psychiatrist. R. 247-250.  Dr. Doody diagnosed Major Depression and an anxiety disorder. R. 250.  She assigned Claimant a GAF score of 59-60. R. 250.  When Claimant was seen by Dr. Doody on December 11, 2007, she noted that claimant was getting better on his medications. R. 244.  At this visit, Dr. Doody indicated Claimant's diagnoses were Depressive Disorder and Panic Disorder, with Agoraphobia. R. 244.

Claimant continued to be treated by Dr. Doody after his DLI.  When Dr. Doody saw Claimant on February 5, 2008, he reported being more depressed for "the past few weeks." R. 259.  On March 20, 2008, Dr. Doody noted that Claimant reported he was "a bit better" before he ran out of his medications. R. 258.  On April 11, 2008, Dr. Doody noted that Claimant's mood was "pretty good" with no panic attacks. R. 257.

---

[3] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

Claimant was seen by Melanie Barraza, LCSW, for individual therapy beginning November 12, 2007. R. 306-07. When Claimant saw Ms. Barraza on December 2, 2007, she noted that his medication "takes [the] edge off irritability . . . 4 out of 10 depression wise." R. 305. On December 21, 2007, Claimant "denie[d] severe symptoms of [depression] or anxiety," and reported that he "sleeps and eats well." R. 305. After his DLI, Claimant saw Ms. Barraza on January 4, 2008, who noted that she explored Claimant's "desire to work vs. moving forward with [Social Security Disibility]." R. 303. She noted that "[t]here seems to be a lack of motivation to do anything." R. 303. On January 25, 2008, Ms. Barraza discussed with Claimant his "continued need to explore hobbies" and that "his isolation [with] boredom may contribute to depression." R. 302.

There are additional mental health treatment records after Claimant's DLI. However, they are not relevant to his condition prior to his DLI.

## IV. ISSUES PRESENTED

Claimant's sole argument on appeal is that the ALJ failed to properly consider his obesity. He argues that the ALJ erred in finding his obesity was not a severe impairment, and also that the ALJ did not properly consider his obesity in the overall disability determination.

## V. DISCUSSION

Social Security Ruling (SSR) 02-01p provides guidance in the evaluation of obesity. It provides that "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment," and that "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity)" will not establish whether obesity is a "severe" impairment. SSR 02-1p, 2002 WL 34686281, *4 (S.S.A.) (alteration supplied). Rather, an ALJ must "do an individualized assessment of the impact of obesity on an individual's functioning." *Id.* The Ruling also states that obesity must be considered in assessing a claimant's RFC by assessing "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6.

Although Claimant argues that the ALJ did not consider his obesity in "the overall disability determination," a review of the ALJ's decision shows that he considered Claimant's obesity at the appropriate steps in the sequential evaluation process. The ALJ evaluated whether Claimant's obesity was a severe impairment, and found that it did not cause more than minimal functional limitations. R. 19. In reaching that decision, the ALJ emphasized the absence of evidence in the record documenting limitations caused by Claimant's obesity: "More importantly, although obesity would have been a risk factor for numerous other medical

10

problems, there is nothing in the record through December 31, 2007 to support more than minimal functional limitations due to his obesity." R. 19. Therefore, the ALJ found that Claimant's "obesity was 'not severe' on or before . . . December 31, 2007." R. 19.

The ALJ also recognized that he had to consider Claimant's obesity in assessing his RFC, even if it was not a severe impairment. He stated that in making his RFC determination, "the undersigned must consider all of the claimant's impairments, including impairments that are not severe." R. 18. Therefore, in assessing Claimant's RFC, the ALJ noted that his obesity had been addressed earlier, and was found not to result in more than minimal functional limitations. R. 22.

This is not a case such as *Walker v. Bowen*, where the ALJ did not mention many of the claimant's impairments. 826 F.2d 996, 1001 (11th Cir. 1987) (finding that the ALJ did not consider the combination of claimant's impairments before determining her RFC when he made specific reference to only two impairments and failed to mention five other impairments except to find they did not establish disabling pain). In the present case, there is ample evidence showing the ALJ considered all of Claimant's impairments (including his obesity) and their combined impact on his ability to perform work related activities. Therefore, the

11

ALJ did not fail to properly consider Claimant's obesity in combination with his other impairments. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding that the ALJ considered the claimant's combined impairments because of his lengthy consideration of those conditions and his well-articulated findings as to their effect on the claimant).

Additionally, the ALJ's finding that Claimant's obesity caused no more than minimal functional limitations is reasonable based on the evidence of record. When he applied for disability in August 2008, Claimant did not allege that his obesity limited his ability to work. He listed only mental impairments as conditions that affected his ability to work, and he included no physical limitations when explaining how he was limited by his impairments. R. 92. At his hearing, Claimant was asked about his weight on December 31, 2007, and he responded that he weighed "between 250 and maybe 300 at that time, maybe a little less." R. 48. In response to the next question — which was how far he could walk without having to stop to rest — he testified as follows: "I could go a fairly good distance. I mean maybe a half a mile or so . . . ." R. 48. Therefore, Claimant's own reports of his limitations do not support significant limitations caused by his obesity prior to his DLI.

The medical records also fail to document any work-related limitations caused by Claimant's obesity prior to his DLI. Although there are notations indicating Claimant was morbidly obese, such notations alone are insufficient to establish that his obesity caused any limitation in his ability to work. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (unpublished) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986)). Therefore, the ALJ's findings as to the limitations caused by Claimant's obesity prior to his DLI are supported by the medical evidence.

For these reasons, the court finds that the ALJ applied the proper legal standards in assessing the vocational impact of Claimant's obesity. Additionally, his factual findings are reasonable based on the evidence of record. Accordingly, the ALJ's decision is supported by substantial evidence.

## VI. CONCLUSION AND ORDER

The court concludes the ALJ's determination that Claimant is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final

decision is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 11th day of April, 2014.

_____
United States District Judge